# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN MARSHALL SPENCE,<br><br>    Petitioner,<br>v.<br><br>WARDEN FAUCHER,<br><br>    Respondent. | Civil Action No.<br>3:17-CV-01595 (CSH)<br><br><br><br><br>JUNE 7, 2018 |

### MEMORANDUM AND OPINION ON PETITION FOR WRIT OF HABEAS CORPUS

**HAIGHT, Senior District Judge:**

  Petitioner John Marshall Spence ("Spence"), a Connecticut inmate proceeding *pro se*, brings this petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, challenging his state conviction. Respondent (the "State") opposes the petition. This opinion resolves it.

**I. BACKGROUND**

  On September 23, 2013, following a trial before a jury in the Connecticut Superior Court for the Judicial District of Fairfield, Spence was found guilty on charges of possession of child pornography. He was sentenced to a term of imprisonment of eighteen years, execution suspended after nine years, followed by twenty years of probation with special conditions. *See* Respondent's Answer to Complaint ("Resp. Ans.") Appendix A, Doc. 14-2 at 2-3.

  Spence challenged his conviction on direct appeal, raising three grounds: (1) that the trial court improperly denied his motion to suppress statements Spence made to the police prior to his formal arrest; (2) that the trial court gave an erroneous constructive possession charge; and (3) that the trial court improperly permitted the State to offer rebuttal evidence on matters it was aware were

at issue during the case-in-chief. *See* Resp. Ans. App. C, Doc. 14-6. The Connecticut Appellate Court affirmed the conviction, and the Connecticut Supreme Court denied certification to appeal. *State v. Spence*, 165 Conn. App. 110, 112 (2016), *cert. denied,* 321 Conn. 927 (2016).

On September 30, 2016, Spence filed a petition for writ of habeas corpus in state court challenging the initial question posed before the *Miranda* warning; the same issue asserted in his first ground on direct appeal. *See* Resp. Ans. App. F, Doc. 14-9. On October 12, 2016, the petition was declined by the state court as the relief requested was not available. *See* Petition, Doc. 1 at 6, 10; Resp. Ans. App. G, Doc. 14-10. On September 17, 2017, Spence commenced this federal habeas action. Doc. 1.

The Connecticut Appellate Court determined that the jury reasonably could have found the following facts:

> The state police began investigating [Spence's] activities when they received a tip that a person with a Connecticut Internet protocol (IP) address was downloading child pornography over peer-to-peer file sharing networks. Using a computer program tailored for law enforcement, the state police accessed the identified IP address and downloaded images of child pornography. The state police applied for and were granted an *ex parte* order to require the Internet service provider to reveal the name and street address associated with the identified IP address. The state police then obtained a search warrant for [Spence's] home.
>
> On June 13, 2012, state troopers and local police executed a search and seizure warrant at [Spence's] home at 34 May Street in Fairfield. Police entered the home shortly after 6 a.m. and found [Spence], his wife, three children, and mother-in-law in the single family residence. At that time, the lead investigator, state police Detective David Aresco, asked [Spence] if he could explain why the state police were in his home. In response, [Spence] asked if "he could speak with Detective Aresco in private." Once outside, [Spence] received a *Miranda* warning and then provided an oral and written statement acknowledging that he had downloaded more than 150 images and videos of child pornography and that he had exclusive control of the computer where the files were stored.
>
> Before [Spence's] trial began, he moved to suppress the statements he made to the

state police on the day his home was searched. On September 6, 2013, the trial court conducted a hearing on the motion. Ultimately, the trial court denied the motion and [Spence] was convicted by a jury of possession of child pornography in the first degree.

*Spence*, 165 Conn. App. at 113–14 (footnote omitted).

## II. STANDARD OF REVIEW

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 52 U.S. 86, 91 (2011). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Because federal habeas relief may only be obtained for a violation of federal law, it "does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quotation marks and citation omitted).

A federal habeas court may grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings" only if the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "This standard . . . is difficult to meet: To obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Metrish v.*

*Lancaster*, 569 U.S. 351, 357–58 (2013) (quotation marks and citation omitted). "Clearly established Federal law includes only the holdings of the Court's decisions; and an unreasonable application of those holdings must be objectively unreasonable." *White v. Woodall*, 134 S. Ct. 1697, 1699 (2014) (quotation marks and citations omitted). Thus, the question before the federal court is not whether the state court's determination was incorrect, but rather whether that determination was unreasonable; "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). *See also Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) ("In order for a state court's decision to be an unreasonable application of [Supreme Court] case law, the ruling must be objectively unreasonable, not merely wrong; even clear error will not suffice." (quotation marks and citation omitted)), *reh'g denied*, 138 S. Ct. 35 (2017).

A state decision will be considered contrary to clearly established federal precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A decision is considered an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08.

"This substantive limitation § 2254(d) places upon a federal court's power to give habeas relief to a state prisoner is frequently referred to as 'AEDPA deference.'" *Lewis v. Comm'r of Corr.*, 975 F.Supp.2d 169, 172 (D. Conn. Dec. 16, 2013) (citations omitted), *aff'd sub nom. Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109 (2d Cir. 2015). Employing such deference, a federal habeas court must presume all state court factual determinations to be correct, unless the petitioner rebuts the

findings by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "This [is] a difficult to meet and highly deferential standard . . . [which] demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 563 U.S. at 171 (quotation marks and citations omitted). As the Second Circuit stated, "[p]ursuant to that standard, we may reverse a state court ruling only where it was so lacking in justification that there was no possibility for fairminded disagreement." *Samuel v. LaValley*, 551 F. App'x 614, 616 (2d Cir. 2014) (quotation marks and citation omitted).

In sum, for habeas relief to be granted to a person in custody pursuant to the judgment of a state court, the Court must find an unreasonable application of federal law or an unreasonable determination of facts by the state court. 28 U.S.C. § 2254(d). Moreover, the petitioner must have exhausted his claims in state court. *Id*. at (b)(1)(A). "Exhaustion requires that the prisoner fairly present the federal claim in each appropriate state court (including a state supreme court with powers of discretionary review)." *Richardson v. Superintendent of Mid–Orange Corr. Facility*, 621 F.3d 196, 201 (2d Cir.2010) (quotation marks and citation omitted), *cert. denied sub nom., Richardson v. Inserra*, 562 U.S. 1188 (2011). Finally, the federal court's review under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181.

### III. DISCUSSION

Spence raises four grounds for habeas relief. The first ground is entitled, "the petitioner police encounter on the day of arrest," Pet., Doc. 1 at 9, and asserts that Spence's *Miranda* rights were violated on the day of his arrest. Specifically, Spence states that he was "questioned on the day of 6/13/2012, in [his] home, and an incriminating question was posed to [him] with the hopes of a response, but the officer before questioning was started, failed to administer pre-*Miranda* warnings,

leaving the Petitioner in a state where [he] had no choice but to answer, incriminating [himself] in the process." *Id.*

Spence's second ground for review is labeled, "the Connecticut Appellate Court's decision to affirm the Petitioner's conviction." *Id.* at 11. Spence contends that the Connecticut Appellate Court's decision to affirm the conviction "should be revisited," in light of recent changes to the "rules to police encounters in this state." *Id.* Spence's third ground is entitled: "The state supreme court's denial of petition for appeal." *Id.* at 13. Spence argues that the "state supreme court's denial of the petitioner's application, knowing the substance or subject matter of what argument the petitioner raised, was somewhat prejudicial due to the possible implications a decision in the petitioner's favor could pose." *Id.* (sic). The fourth and final ground raised by Spence is labeled: "The state habeas corpus denial of the petitioner application to obtain a writ of habeas corpus." *Id.* at 15. On this last ground, Spence states that his state habeas petition was filed, and was given a docket number, but was denied "days later and the writ returned to the petitioner, stating that the petitioner's argument was not listed in the state of Connecticut's practice book." *Id.*

The Respondent argues that the petition should be denied. Specifically, Respondent contends that the first two grounds that Spence raises are intertwined and are without merit, as the state court applied the correct law and reasonably decided the *Miranda* issue. Respondent also argues that the third and fourth grounds for relief are state law issues and thus do not present cognizable grounds for habeas relief. The Court will examine each of the claims raised by Spence in turn.

**A.     Ground One: *Miranda* Violation**

The first ground for relief raises the question of whether Spence's rights were violated when he was questioned in this home.

Generally, statements made during a custodial interrogation are not admissible, unless a suspect has first been advised of his or her rights. *Miranda v. Arizona*, 384, U.S. 436, 444 (1966). "Recognizing that the inherently coercive nature of custodial interrogation blurs the line between voluntary and involuntary statements, [the Supreme Court] in *Miranda* adopted a set of prophylactic measures designed to safeguard the constitutional guarantee against self-incrimination." *J.D.B. v. North Carolina*, 564 U.S. 261, 269 (2011) (quotation marks and internal citation omitted). These measures are only required "where there has been such a restriction on a person's freedom as to render him in custody." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quotation marks and citations omitted). Indeed, "[a] person must both be in custody and subject to interrogation for *Miranda* safeguards to apply." *U.S v. Familetti*, 878 F.3d 53, 57 (2d Cir. 2017) (quotation marks and citation omitted).

The Court undertakes an objective inquiry in resolving the question of whether a suspect was in custody at the time of an interrogation. *J.D.B.*, 564 U.S. at 270. "[C]ustody for *Miranda* purposes is not coterminous with, though it is often informed by, the colloquial understanding of custody." *U.S. v. FNU LNU*, 653 F.3d 144, 152–53 (2d Cir. 2011). "As used in our *Miranda* case law, 'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 508-509 (2012). The Court continued in *Howes*: "In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* at 509 (quotation marks and citations omitted). Such an inquiry requires a court to "examine all of the circumstances surrounding the interrogation." *Id.* "Relevant factors include the location of the questioning, its duration,

statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Id.* (internal citations omitted). If the Court determines that the individual's freedom of movement was restricted, it then must go on to ask "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id*.

In *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004), the Supreme Court stated: "Two discrete inquiries are essential . . . : first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." (quotation marks and citation omitted). In the context of 28 U.S.C. § 2254, the former question is an issue of fact, to which the state courts' findings are entitled to a presumption of correctness. *Parsad v. Greener*, 337 F.3d 175, 181 (2d Cir. 2003). The latter question, however, is a mixed question of law and fact, which warrants independent review by the federal habeas court. *Id.* at 182 (citing *Thompson v. Keohane,* 516 U.S. 99, 112-13 (1995)).

With these guiding principles in mind, the Court turns to the question raised by the petition's first claim for habeas relief: whether Spence was in custody for the purposes of *Miranda*, when a potentially incriminating question was posed by Detective Aresco.[1] The state trial court answered

---

[1] It is uncontested that the question posed by Detective Aresco in Spence's home constituted an 'interrogation' for *Miranda* purposes. During the suppression hearing at the trial court, Detective Aresco described his initial "conversation" with Spence.
    Q: What was the subject of that conversation?
    A: I explained why I was there, I explained that I was investigating a computer crime. I probably told him that it was related to some inappropriate computer activity. I probably asked him if he can explain my presence, and again, based upon looking at my police report at that time, he asked if we could speak privately.
     . . . .

that question in the negative. *See State v. Spence*, No. FBTCR12265481T, 2013 WL 6671221, at *3 (Conn. Super. Ct. Nov. 19, 2013). The Connecticut Appellate Court affirmed, applying the United States Supreme Court's holding in *Miranda*, and certain Connecticut Supreme Court cases that rely on *Miranda* and its progeny. *See Spence*, 165 Conn. App. at 116-20 (quoting and citing *State v. Mangual*, 311 Conn. 182 (2014)). The Connecticut courts having found that Spence was not in custody at the time of the utterances in question, the *Miranda* rule did not apply.

Here, there is no question that the state court identified the correct legal principles and Supreme Court law. I am therefore required to determine whether the state-court decision "involved an unreasonable application of clearly established law" in concluding that Spence was not in custody. *Alvarado*, 541 U.S. at 663 (quotation marks omitted) (citing 28 U.S.C. § 2254(d)(1)).

The Connecticut Appellate Court determined that the trial court reasonably could have found the following additional facts, relevant to the custody inquiry:

> The search warrant was executed at the defendant's home at approximately 6:10 a.m. on June 13, 2012. Eight to ten state troopers and police officers entered the home. The officers were wearing standard issue side arms, bulletproof vests, and clothes that identified that they were law enforcement. The defendant was sleeping on the second floor when the police arrived. After the police conducted a protective sweep of the rooms in the home, they gathered the entire family into the kitchen or dining room area. Without issuing a *Miranda* warning, Aresco informed the residents that he was investigating a computer crime and then asked the defendant if he could explain why the police were in his home. The defendant responded by asking if they

---

> Q: What is it that you first said to him? If you could recall your exact words.
> A: I think I said something like - you know, I identified myself, I think that I probably explained that I was with the computer crime unit, that we were there for a computer related investigation and I believe I had asked if he can explain our presence. And the reason I'm pretty confident about that is because that's normally how I do it on every search warrant.

Resp. Ans. App. H, Doc. 14-13 at 10, 32. Aresco's question was clearly posed with the hopes of eliciting an incriminating response.

> could speak in private. The defendant therefore was brought outside to an unmarked police car. He was advised of his *Miranda* rights and signed a waiver notice to confirm that he was aware of his rights. The defendant was questioned and Aresco recorded notes and prepared a written statement. The three page written statement was read back to the defendant. After rereading it and making corrections, the defendant signed the statement and initialed each page. The questioning lasted for approximately one and one-half hours and the defendant was allowed to take a cigarette break. The court held a hearing on the motion to suppress that included testimony from Aresco and another state trooper who was involved with the execution of the search warrant at the defendant's home. The court denied the defendant's motion after concluding that the defendant was not in custody when he initially responded to Aresco's inquiry.

*Spence*, 165 Conn. App. at 114–15.

At the pre-trial suppression hearing, Spence argued that his statement was not voluntary, due to the fact that he was in custody at the time he made his statement. In denying the motion to suppress, the trial court determined that no evidence existed to suggest that Spence was not free to leave during the execution of the search warrant, noting that "a defendant is normally not in custody, and the *Miranda* warnings are not required, when he or she is detained during the execution of a search warrant." *Spence*, 2013 WL 6671221, at *3.

The Appellate Court reviewed the in-custody determination *de novo*, considered the totality of the circumstances surrounding the interrogation at Spence's home, and affirmed the trial court's denial of Spence's motion to suppress. Relying in part on a recent decision from the Connecticut Supreme Court in a factually similar case, *Mangual*, 311 Conn. 182, the Appellate Court set out the appropriate standard, and found that Spence was not in custody before the *Miranda* warnings were received. *Spence*, 165 Conn. App. at 119.

It is worth repeating here the facts considered by the Appellate Court in reaching this conclusion. The police arrived early in the morning. The residents of the home were asleep. They

were roused from their beds, brought downstairs, and gathered together in one room. There were eight, nine, or ten state troopers and local police officers. They were in clothes that indicated they were law enforcement. They bore visible weapons and wore bulletproof vests. Mere minutes elapsed from the time Spence was awoken by police and the time that Aresco asked him to explain the officers' presence. Spence was not explicitly informed that he was free to leave.

On the other hand, Spence was in his own home. He was not handcuffed, nor was he restrained in any way. Although visible, the officers' weapons were not unholstered.[2] Spence was surrounded by his family, including several other adults. Aresco stated the reason that the officers were present, and then informally directed one brief, general question to Spence – who did not

---

[2] It is unclear from the record whether the weapon of every police officer who entered Spence's premises that fateful morning remained holstered. Two officers testified at the suppression hearing and Spence's trial: Aresco, and Rosenberg, both state troopers. Aresco testified: "I can say that I didn't take my weapon out of the holster. I don't know what the other officers did as they were securing the house." Resp. Ans. App. H, Doc. 14-13 at 34. Rosenberg testified only that "typically" the officers' weapons remain holstered "unless we are threatened." Resp. Ans. App. H, Doc. 14-14 at 6. Spence offered no evidence or testimony as to this particular issue, however, he conceded this fact twice in his briefs on appeal. *See* Resp. Ans. App. C, Doc. 14-6 at 20 ("[T]he police officers in this case did not actually brandish their weapons[.]"); *see also* Resp. Ans. App. E, Doc. 14-8 at 8 ("Of the factors identified as 'key' by the *Mangual* court, only one - brandishing of weapons - was absent here. . . . the mere fact that [the officers'] weapons were only carried rather than brandished did not make the atmosphere significantly less police-dominated than in *Mangual*.").

In ruling on the motion to suppress, the trial court found that "[w]hile all of the officers carried weapons, they did not pull them or use them at any point during the execution of the warrant." *Spence*, 2013 WL 6671221, at *1. The Appellate Court echoed this finding, stating that "the officers in the defendant's home were not brandishing weapons." *Spence*, 165 Conn. App. at 119. Under section 2254(e)(1), the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Here, Spence has not rebutted the presumption of correctness of this fact; quite the opposite, he conceded it, twice, and has not argued anything to the contrary in his petition for habeas relief. Accordingly, the Court will presume that the state's factual determination as to the officers' weapons is correct.

answer the question. Instead, Spence requested to speak in private;³ this request was immediately accommodated. Spence then was led outside, was issued the *Miranda* warnings, and questioning resumed.

The Appellate Court distinguished these facts from those in *Mangual*, emphasizing that the officers in Spence's home were not "brandishing weapons," and the residential setting was a "home" rather than a "small apartment." *Spence*, 165 Conn. App. at 119. The Appellate Court concluded, "[t]he police dominated atmosphere described in *Mangual* was not present in this case. Therefore no *Miranda* warning was required." *Id.*

On the basis of these facts, and the Appellate Court's stated reasoning, this Court cannot say that the state court unreasonably applied clearly established law. On the contrary, the state court's approach was entirely consistent with Supreme Court precedent, which instructs us to consider the factual circumstances surrounding the interrogation, and then to ask whether a reasonable person would feel free to leave. As discussed above, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. It is clear that the state court's ruling was not lacking in justification.

The Supreme Court decision in *Alvarado*, 541 U.S. 652, is instructive. *Alvarado* involved

---

³ The Court recognizes that this fact – that, in response to the question posed, Spence asked to speak privately – could cut either way for the custody inquiry. One could see it as support for the argument that the setting was inherently custodial, insofar as Spence felt that he must ask permission to leave the room to speak; on the other hand, the fact that Spence answered Aresco's question with a request, in essence, to leave, could be viewed as evidence that Spence did not view his movement as restricted.

a habeas petition challenging a state court determination of the petitioner's non-custodial status for *Miranda* purposes. The state court had found that the petitioner was not in custody at the time of the interrogation; in reviewing the District Court's denial of a writ, the Ninth Circuit disagreed, holding that the state court unreasonably applied clearly established law. The United States Supreme Court reversed. Noting that the custody determination is a "general standard" which "can demand a substantial element of judgment," *id.* at 664, the Supreme Court found that the case presented facts that supported an 'in custody' determination, and also presented facts that did not. The Court reasoned:

> These differing indications lead us to hold that the state court's application of our custody standard was reasonable. The Court of Appeals was nowhere close to the mark when it concluded otherwise. Although the question of what an "unreasonable application" of law might be is difficult in some cases, it is not difficult here. The custody test is general, and the state court's application of our law fits within the matrix of our prior decisions. We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter. A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly. Relief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable. Under that standard, relief cannot be granted.

*Alvarado*, 541 U.S. at 665–66 (quotation marks and internal citations omitted).

The case at hand is almost indistinguishable. There are facts that would indicate that Spence was not in custody at the time of the initial interrogation, and there are facts that "point in the opposite direction." *Id.* at 665.

To be sure, on the facts of this case, this Court has its doubts as to whether it would have reached the same conclusion as the state courts. I would think that a reasonable individual – moments after being awoken in his own bed by armed state troopers and police wearing bulletproof vests, and herded into one room with several other family members, with up to nine officers present

– would not have felt free to simply walk out of the house in the moments that followed. But that is not the question before this Court, sitting in habeas review, bound by the requirements of the AEDPA.

"Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the controlling law] incorrectly." *Woodford*, 537 U.S. at 24–25; *see also Lewis*, 975 F. Supp. 2d at 206 ("I am bound by the Connecticut Court's conclusion on the [Constitutional question] if that conclusion was reasonable—not necessarily correct, but reasonable." (quotation marks and citation omitted)). Indeed, "§ 2254(d)'s highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. at 24. On this record, the state court's decision that Spence was not in custody, and consequently, that no *Miranda* warnings were necessary "fits within the matrix" of Supreme Court precedent, *Alvarado*, 541 U.S. at 665; accordingly, the state court's decision falls within the bounds of reason. The petition for writ of habeas corpus is denied on this ground.

**B.      Ground Two: Appellate Court Error**

In Spence's second ground for relief, he argues that the Connecticut Appellate Court failed to consider the Connecticut Supreme Court's most recent pronouncement on the *Miranda* custody determination issue. Spence does not specify the case to which he refers. In any event, failure to follow state law precedent does not warrant federal habeas relief. "The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. . . . [F]ederal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216,

219 (2011) (quotation marks and internal citations omitted); *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). As Spence's second ground rests on an claimed error of state law, relief cannot be granted on this basis.

**C.    Ground Three: Certification to Appeal**

Spence's third ground for relief challenges the Connecticut Supreme Court's denial of his petition for certification to appeal. There is no constitutional right to appeal a state conviction. *Estelle v. Dorrough*, 420 U.S. 534, 536 (1975) ("[T]here is no federal constitutional right to state appellate review of state criminal convictions."); *See also Lackawanna Cty. Dist. Att'y v. Coss*, 532 U.S. 394, 402–03 (2001) (stating that there is no constitutional right to state post-conviction review). As a result, "alleged errors in a post-conviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief." *Word v. Lord*, 648 F.3d 129, 132 (2d Cir. 2011).

Further, in Connecticut, certification on an appeal by the Connecticut Supreme Court "is not a matter of right but of sound judicial discretion and will be allowed only where there are special and important reasons therefor." *Janulawicz v. Comm'r of Correction*, 310 Conn. 265, 275 n.10 (2013) (quotations omitted) (quoting Connecticut Practice Book § 84-2). Thus, in Connecticut, a petition for certification to appeal to the Supreme Court is discretionary, and such discretion is authorized by state law.

As this ground does not implicate federal law or a constitutional right, federal habeas corpus relief is not available.

D. **Ground Four: State Habeas Petition**

Finally, Spence's fourth ground for relief raises a challenge to the state court's declination of Spence's state habeas petition. Spence sought to have the state habeas court review the decision of the Connecticut Appellate Court regarding the in-custody determination. *See* Resp. Ans. App. F, Doc. 14-9. The state court declined the petition pursuant to Connecticut Practice Book § 23-24(a)(3), noting that such relief was not available under the court's rules. *See* Resp. Ans. App. App. G, Doc. 14-10; *see also* Conn. Practice Book Sec. 23-24(a) ("The judicial authority shall promptly review any petition for a writ of habeas corpus to determine whether the writ should issue. The judicial authority shall issue the writ unless it appears that:(1) the court lacks jurisdiction; (2) the petition is wholly frivolous on its face; or (3) the relief sought is not available.").

As discussed above, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *McGuire*, 502 U.S. at 67–68.; *see also Carvajal v. Artus*, 633 F.3d 95, 107 (2d Cir. 2011) ("State courts are the ultimate expositors of state law." (quotation marks and citation omitted)). Moreover, "[s]ince state habeas proceedings are not required under the Constitution or federal law, any errors occurring during a state habeas proceeding are not cognizable in a federal habeas petition." *Fernandez v. Arnone*, No. 3:11-CV-1827(JBA), 2013 WL 870385, at *2 (D. Conn. Mar. 7, 2013). As the decision to decline the writ was based on state law, there is no basis upon which this Court can review this ground.

IV. **CONCLUSION**

For the foregoing reasons, the *Petition for Writ of Habeas Corpus*, Doc. 1, is DENIED. A

certificate of appealability will not issue. The Clerk is directed to enter judgment and close this case.

Dated: New Haven, Connecticut

    June 7, 2018

                                                        */s/ Charles S. Haight, Jr.*
                                                        CHARLES S. HAIGHT, JR.
                                                        Senior United States District Judge